NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EDDY R. MERCEDES and ANIBAL GONZALES, | : | **Civil Action No. 13-5814 (SRC)** |
| | : | |
| Plaintiffs, | : | **OPINION** |
| | : | |
| v. | : | |
| | : | |
| WELLS FARGO HOME MORTGAGE, INC., | : | |
| | : | |
| Defendant. | : | |

**CHESLER**, District Judge

 This matter comes before the Court upon the motion for summary judgment filed by Defendant Wells Fargo Home Mortgage, Inc. ("Defendant" or "Wells Fargo").  Plaintiffs Eddy Mercedes and Anibal Gonzales ("Plaintiffs") have not submitted opposition to the motion.  The Court has considered the papers submitted and proceeds to rule without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons that follow, the Court will grant Defendant's motion for summary judgment.

### I. BACKGROUND

#### A.  Facts

 This case involves borrowers who fell behind on their mortgage payments, and the accuracy of the information that their lender reported to credit agencies.

 In July of 2009, Wells Fargo issued Plaintiffs Eddy Mercedes and Anibal Gonzales a mortgage loan on their property in Paterson, New Jersey.  In light of damage inflicted by Hurricane Sandy, Plaintiff Mercedes requested assistance with his loan payments, and Wells Fargo accordingly granted him a temporary forbearance on the loan.  Wells Fargo initially told

credit reporting agencies ("CRAs") that Mercedes had entered into a partial-payment agreement on the loan, but in March of 2012 it instructed the CRAs to remove all references to a partial-payment agreement.

After the forbearance ended, Plaintiff did not resume making payments.  In November of 2012, Wells Fargo issued a Moratorium on the loan, which meant that for ninety days Wells Fargo would not notify CRAs that Plaintiff was late on payments, nor would it charge him late fees.  Wells Fargo informed Plaintiff that payments would resume in February of 2013.  At the end of that Moratorium period, however, Plaintiff again did not resume making payments.

In March of 2013, Wells Fargo offered Plaintiff a "trial" modification plan, and Plaintiff temporarily made payments under that plan.  In July of 2013, Wells Fargo offered Plaintiff a "final loan modification," which would have saved him about $400 a month, brought his loan current, and reduced his interest rate.  The terms of this offer were acceptable to Plaintiff, but he nevertheless rejected it because he did not believe it would sufficiently reduce his principal balance.  After rejecting this offer, Plaintiff did not reapply for a modification.

In September of 2013, Plaintiff still had not resumed making payments, and Wells Fargo reported to CRAs that Plaintiff had become delinquent on the loan.

Shortly thereafter, Plaintiff complained about the report that Wells Fargo issued.  He emphasized that he was a victim of Hurricane Sandy, that his account had been placed in a moratorium, and that he was going through a modification process.  Plaintiff did not allege that any fraud or identity theft had occurred.  Wells Fargo received notice of Plaintiff's complaints.

In response, Wells Fargo investigated the accuracy of the information it had reported.  In April of 2013, it notified the CRAs that the information it had reported was indeed accurate: Plaintiff Mercedes was delinquent on his mortgage loan.

2

### B. Procedural History

Plaintiffs filed a Complaint against Wells Fargo in October of 2013.  In it, Plaintiffs claim that Wells Fargo reported false and negative information about Plaintiffs to the CRAs, which violated the Fair Credit Reporting Act ("FCRA").  They also assert a promissory estoppel claim under New Jersey state law, arguing that Wells Fargo promised Plaintiffs a moratorium, and that Plaintiffs fell behind on payments as a result of that promise.

In October of 2014, Wells Fargo moved for summary judgment.  In support of its motion, Wells Fargo argues that Plaintiffs have failed to establish any issues of material fact.  Namely, Wells Fargo highlights that Plaintiff Mercedes admits that he failed to make payments, which means that the information regarding his delinquency status was true.  Wells Fargo further urges that it conducted a reasonable investigation to verify the disputed information.  Finally, Wells Fargo notes that the FCRA preempts Plaintiffs' state law claims, and that in any event, the promissory estoppel theory fails as a matter of law.

## II.   DISCUSSION

### A. Legal Standard

The Court begins by noting that Plaintiffs did not submit any opposition to Defendant's motion.[1]  The Court will thus accept as true the material facts put forth by Defendant in its

---

[1] Defendant moved for summary judgment on October 2, 2014 [Docket Entry 17].  The Clerk's Office assigned that filing a motion date of November 3, 2014, giving Plaintiffs until October 20 to oppose the motion.  Plaintiffs filed no opposition by that date.  On October 31, the Court sent Plaintiffs' counsel, Mr. Babler, a letter, which stated that any opposition had to be filed by November 17 [Docket Entry 18].  The letter expressly provided, "Should Plaintiffs fail to submit opposition by that date, the motion will be deemed unopposed and will be adjudicated based on Defendant's submissions."  [Docket Entry 18].  On December 18, Magistrate Judge Cathy L. Waldor granted a motion from Mr. Babler to withdraw as attorney for Plaintiff Gonzales; Mr. Babler did not move to withdraw from representing Plaintiff Mercedes [Docket Entries 16, 21].  On December 23, 2014, Judge Waldor issued a text order directing Plaintiff Gonzalez to inform the Court by January 23 whether she intended to obtain new counsel, proceed pro se, or discontinue the action [Docket entry 22].  No response is reflected on the docket.

Statement of Undisputed Facts [Docket Entry 17-1].  <u>Local Civil Rule</u> 56.1(a) ("[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion."). That a summary judgment is unopposed, however, does not necessarily indicate that the motion will be granted; instead, the Court must assess whether summary judgment is "appropriate."  <u>See Anchorage Associates v. Virgin Islands Bd. of Tax Review</u>, 922 F.2d 168, 175 (3d Cir. 1990); <u>Robbins v. U.S. Foodservice</u>, No. 11-cv-4599 (JBS), 2012 WL 3781258, at *3 (D.N.J. Aug. 30, 2012) ("The Court must still determine, even for an unopposed summary judgment motion, whether the motion for summary judgment has been properly made and supported and whether granting summary judgment is "appropriate[.]") (citing Federal Rule of Civil Procedure 56(e)).

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986) (construing the similarly worded Rule 56(c), predecessor to the current summary judgment standard set forth in Rule 56(a)).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, a district court "must view the evidence 'in the light most favorable to the opposing party.'"  <u>Tolan v. Cotton</u>, 134 S. Ct. 1861, 1866 (2014) (quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970)).  The court may not make credibility determinations or engage in any weighing of the evidence. <u>Anderson</u>, 477 U.S. at 255.

The showing required to establish that there is no genuine issue of material fact depends on whether the moving party bears the burden of proof at trial.  On claims for which the moving

party does not bear the burden of proof at trial, the movant must point out to the district court "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.  In contrast, "[w]hen the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish the existence of a genuine issue as to a material fact.  Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985).  "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."  Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001), overruled on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs, 134 S. Ct. 773 (2014).  However, the party opposing the motion for summary judgment cannot rest on mere allegations; instead, it must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; see also Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) (holding that "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment").

**B.  Plaintiffs' Claims under the FCRA**

The FCRA seeks "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy," and it accordingly imposes certain duties upon furnishers of credit information.  Henderson v. Equable Ascent Fin., No. 11-cv-3576 (SRC), 2011 WL 5429631, at *3 (D.N.J. Nov. 4, 2011) (citing Gelman v. State Farm Mut. Auto. Ins.,

583 F.3d 187, 191 (3d Cir.2009)).  First, furnishers must provide CRAs with accurate information.  15 U.S.C. § 1681s–2(a).  If a consumer disputes the accuracy of reported information, the consumer may notify the CRA, whereupon the CRA must "conduct a reasonable investigation[.]"  15 U.S.C. § 1681i(a)(1)(A).  The CRA must also notify the furnisher of the information, 15 U.S.C. § 1681i(a)(2), which triggers the furnisher's second duty:  to investigate.  Specifically, the furnisher must also conduct its own investigation of the disputed information and report back to the CRA regarding its veracity.  15 U.S.C. § 1681s–2(b)(1).  Only if "the investigation finds that the information is incomplete or inaccurate" must the furnisher correct the information with the CRAs.  See 15 U.S.C.A. § 1681s-2.  Moreover, "[i]n the absence of allegations of fraud, identity theft, or other issues not identifiable from the face of its records, the furnisher need not do more [than] verify that the reported information is consistent with the information in its records."  Grossman v. Barclays Bank Delaware, No. 12-cv-6238 (PGS), 2014 WL 647970, at *9 (D.N.J. Feb. 19, 2014).

A consumer seeking to enforce a furnisher's duty to investigate "must plead that [he]: (1) sent notice of disputed information to a consumer reporting agency, (2) the consumer reporting agency then notified the defendant furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information."  Henderson, 2011 WL 5429631, at *3 (citing Martinez v. Granite State Mgmt. & Res., No. 08-cv-2769 (JLL), 2008 WL 5046792, at *3 (D.N.J. Nov. 20, 2008).

Here, the Court finds that Wells Fargo is entitled to summary judgment on Plaintiffs' FCRA claim because Plaintiffs have not demonstrated that Wells Fargo "failed to investigate and modify [] inaccurate information."  Id.

With respect to the precise information at issue, Plaintiffs highlight two instances of alleged inaccurate reporting. First, Plaintiffs note Wells Fargo's March 2012 reference to a partial-payment agreement. Critically, however, the record demonstrates that with regard to that report, Wells Fargo did exactly what the FCRA requires: it contacted the relevant CRAs and instructed them to remove any reference to a partial-payment agreement on Plaintiffs' account.

Plaintiffs next point to the fact that Wells Fargo eventually reported to CRAs that Mercedes became delinquent on the loan. The Court finds, however, that Wells Fargo has demonstrated that the relevant claim -- that Plaintiff was delinquent on the loan -- was true. Indeed, Plaintiff admits as much. Specifically, Mercedes testified that he failed to make the payments which became due at the end of the Moratorium period, as well as those following the July 2013 final loan modification. Accordingly, by Mercedes' own admission, he was delinquent on his loan when Wells Fargo claimed that he was. Thus, Wells Fargo did not report inaccurate information.

Moreover, the record demonstrates that upon receiving notice of Plaintiff's dispute, Wells Fargo conducted a reasonable investigation. Plaintiff's dispute centered only on his claims that he was a victim of Hurricane Sandy, that his account had been placed in a moratorium period, and that it was going through a modification process. Because Plaintiff simply disputed that his loan payments were delinquent, Wells Fargo only needed to "verify that the reported information [was] consistent with the information in its records," see Grossman, supra, 2014 WL 647970, at *9, which appears to be exactly what it did. In conformity with the FCRA, Wells Fargo confirmed that Plaintiff was delinquent, and it then communicated its conclusion to the CRAs.

All told, Plaintiffs have not demonstrated either that Wells Fargo reported any inaccurate information nor that it then failed to investigate and correct such information.

### C.  State-Law Claim

Plaintiffs next assert that Wells Fargo's conduct violated state-law principles of promissory estoppel.  The Court need not reach this issue, because the FCRA preempts state-law claims for conduct allegedly violating the statute's provisions.  <u>See</u> 15 U.S.C. § 1681t(b)(1)(F) ("No requirement or prohibition may be imposed under the laws of any State . . . . relating to the responsibilities of persons who furnish information to consumer reporting agencies[.]"); <u>see also</u> <u>Campbell v. Chase Manhattan Bank</u>, No. 02-cv-3489 (JWB), 2005 WL 1514221, at *17 (D.N.J. June 27, 2005) ("Courts have consistently held that state law claims are preempted by this section of the FCRA . . . . Consistent with the language in the FCRA, this Court finds that plaintiffs' state law claims of misrepresentation, emotional distress, injurious falsehood and breach of contract . . . are preempted.").  Wells Fargo is accordingly entitled to summary judgment on this Count as well.

### III.  CONCLUSION

For the reasons above, the Court finds that Defendant has demonstrated that it is entitled to summary judgment on all claims in this action.  Defendant's motion will be granted in its entirety.  An appropriate Order will be filed.


　　　　　　　　　　　　　　　　_____s/ Stanley R. Chesler_____
　　　　　　　　　　　　　　　　STANLEY R. CHESLER
　　　　　　　　　　　　　　　　United States District Judge

Dated: February 3, 2015